**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| STREET SURFING, LLC, a Nevada limited liability company, *Plaintiff-Appellant*, <br><br> v. <br><br> GREAT AMERICAN E&S INSURANCE COMPANY, a Delaware corporation, *Defendant-Appellee*. | No. 12-55351 <br><br> D.C. No. 8:11-cv-01027-AG-MLG <br><br><br> ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted
November 7, 2013—Pasadena, California

Filed June 10, 2014
Amended November 14, 2014

Before: Alfred T. Goodwin, Raymond C. Fisher and
Richard R. Clifton, Circuit Judges.

Order;
Opinion by Judge Fisher

# SUMMARY[*]

## California Insurance Law

The panel filed an order amending its previous opinion, and in the amended opinion the panel affirmed the district court's summary judgment in favor of Great American E&S Insurance Company in a diversity insurance coverage action.

Great American's insured was sued in an underlying action alleging trademark infringement, unfair competition and unfair business practices under federal and California law. The insurance policies at issue covered, among other things, personal and advertising liability. The coverage was limited by several exclusions including a prior publication exclusion which disclaimed coverage for "'[p]ersonal and advertising injury' arising out of oral or written publication of material whose first publication took place before the beginning of the policy period."

The panel held that the underlying action potentially fell within the policies' coverage, triggering Great American's duty to defend under the advertising injury provision, but not under the slogan infringement provision. The panel concluded that the prior publication exclusion in the insurance policies relieved Great American of any duty to defend its insured in the underlying action.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

David A. Gauntlett (argued), James A. Lowe, Gauntlett & Associates, Irvine, California, for Plaintiff-Appellant.

Linda Bondi Morrison (argued), Ryan B. Luther, Tressler LLP, Irvine, California, for Defendant-Appellee.

**ORDER**

The opinion filed June 10, 2014, and reported at 752 F.3d 853 (9th Cir. 2014), is **AMENDED**.  An amended opinion is filed concurrently with this order.

With these amendments, the panel has voted to deny the petition for rehearing.  Judge Clifton has voted to deny the suggestion for rehearing en banc and Judges Goodwin and Fisher so recommend.

The full court has been advised of the suggestion for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc.  Fed. R. App. P. 35.

The petition for rehearing and suggestion for rehearing en banc, filed June 24, 2014, is **DENIED**.

Subsequent petitions for rehearing or rehearing en banc may not be filed.

## OPINION

FISHER, Circuit Judge:

This case arises from general liability insurance policies, including advertising injury coverage, that defendant Great American E&S Insurance Company issued to plaintiff Street Surfing, LLC.  The parties dispute whether those policies obligated Great American to defend Street Surfing in an action alleging trademark infringement, unfair competition and unfair business practices under federal and California law.  The district court granted summary judgment in favor of Great American, concluding that the prior publication exclusion in the policies relieved Great American of any duty to defend.  We affirm.

## BACKGROUND

Street Surfing began selling a two-wheeled, inline skateboard called the "Wave" to retail stores around December 2004.  Less than a year after Street Surfing began doing business, it had already earned about $600,000 in sales.  By 2007, Street Surfing also sold and advertised accessories for the Wave, such as "Lime Green Street Surfing Wheels for The Wave," and the "New Ultimate Street Surfer Wheel Set."

In August 2005, Street Surfing applied for general liability insurance coverage from Great American.  Street Surfing's application certified that its website address was "www.streetsurfing.com" and that the Wave displayed the Street Surfing logo.  The application did not include a picture or any description of the logo.  Great American granted the application and provided general liability insurance to Street Surfing from August 2005 until September 2007.  This period

spanned two policies, the 2005 policy (August 2005 until September 2006), and the 2006 policy (September 2006 until September 2007).[1]  In September 2006, before it issued the 2006 policy, Great American captured a screenshot of Street Surfing's website and saved a copy in its underwriting file.

The policies covered, among other things, personal and advertising injury liability.[2]  That coverage was limited by several exclusions, including: (1) a prior publication exclusion, which disclaimed coverage for "'[p]ersonal and advertising injury' arising out of oral or written publication

---

[1] The provisions at issue in this litigation are identical in both policies.

[2] Specifically, the insurance policies provided:

> We will pay those sums that the Insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the Insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

In relevant part, "personal and advertising injury" was defined as:

> [I]njury including consequential "bodily injury" arising out of one or more of the following offenses:
>
> . . . .
>
> f.   The use of another's advertising idea in your "advertisement"; or
>
> g.   infringing upon another's copyright, trade dress or slogan in your "advertisement".

of material whose first publication took place before the beginning of the policy period"; (2) an intellectual property exclusion (IP exclusion), which barred coverage for "'[p]ersonal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights," though it did not apply to "infringement, in your 'advertisement,' of copyright, trade dress or slogan"; and (3) an advertising injury amendment (AI amendment), which further clarified that "[t]his insurance does not apply to 'advertising injury' arising out of any actual or alleged infringement of intellectual property rights or violation of laws relating to patents, trademarks, trade dress, trade names, trade secrets and know-how."

Rhyn Noll, who owned the registered trademark "Streetsurfer," sued Street Surfing in June 2008, claiming trademark infringement, unfair competition and unfair trade practices under federal and California law. Street Surfing had known that Noll owned the "Streetsurfer" trademark since early 2005, and had unsuccessfully attempted to purchase the trademark around that time. In September 2008, Street Surfing submitted a claim for coverage to Great American and tendered Noll's complaint. Great American denied Street Surfing's claim, citing the IP exclusion and the AI amendment. The letter did not mention the prior publication exclusion, but it did reserve to Great American "the right to assert any and all other terms, provisions, conditions and/or exclusions set forth in its policy which may be applicable to the *Noll* action." Street Surfing responded, arguing that none of the "intellectual property, prior publication, knowing violation of the rights of another, [or] breach of contract exclusions" applied. Nevertheless, Great American again denied coverage based on the IP exclusion and AI amendment, noting that discussion of the other issues raised

by Street Surfing, including the prior publication exclusion, would be irrelevant because Great American "did not cite or rely upon [those] policy provisions for its denial of coverage."

Street Surfing settled with Noll in December 2009.  Its only response to Great American's second denial was to file this action in July 2011, seeking a declaration that Great American was obligated to defend and to settle the Noll action.  When the parties filed cross-motions for summary judgment, the district court concluded that the prior publication exclusion relieved Great American of any duty to defend Street Surfing in the Noll action.  It accordingly granted Great American's motion for summary judgment, denied Street Surfing's motion for partial summary judgment and entered judgment in favor of Great American.[3]  Street Surfing timely appealed.

**STANDARD OF REVIEW**

We review de novo a district court's rulings on cross-motions for summary judgment.  *See Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1086 (9th Cir. 2013).  A motion for summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.* at 1086–87 (quoting Fed. R. Civ. P. 56(a)) (internal quotation marks omitted).  As both sides agree, we apply California insurance law.

---

[3] If Great American has no duty to defend the Noll action, it also has no duty to settle that action.  *See Peerless Lighting Corp. v. Am. Motorists Ins. Co.*, 98 Cal. Rptr. 2d 753, 766 (Ct. App. 2000).

## DISCUSSION

The parties dispute whether Great American was obligated to defend Street Surfing in the Noll action. Under California law, a general liability insurer "has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement." *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 627 (Cal. 1995). The duty to defend is therefore "broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." *Montrose Chem. Corp. v. Superior Court*, 861 P.2d 1153, 1157 (Cal. 1993) (quoting *Horace Mann Ins. Co. v. Barbara B.*, 846 P.2d 792, 795 (Cal. 1993)). The duty continues "until the underlying lawsuit is concluded or until it has been shown that there is *no* potential for coverage." *Id.* (citation omitted).

To prevail, "the insured need only show that the underlying claim *may* fall within policy coverage," whereas "the insurer must prove it *cannot*." *Id.* at 1161. That is, "[a]ny doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Id.* at 1160. These principles apply only to *facts* potentially "giv[ing] rise to a duty to defend," however, not to "doubts regarding the legal interpretation of policy terms." *Indus. Indem. Co. v. Apple Computer, Inc.*, 95 Cal. Rptr. 2d 528, 533 (Ct. App. 1999); *see also Mirpad, LLC v. Cal. Ins. Guarantee Ass'n*, 34 Cal. Rptr. 3d 136, 143 (Ct. App. 2005) ("If coverage depends on an unresolved dispute over a *factual* question, the very existence of that dispute would establish a possibility of coverage and thus a duty to defend."); *Lebas Fashion Imps. of USA, Inc. v. ITT Hartford Ins. Grp.*, 59 Cal. Rptr. 2d 36, 40 (Ct. App. 1996) ("[I]t is settled that a potential

for coverage cannot be based on an unresolved legal dispute concerning policy interpretation which is ultimately resolved in favor of the insurer.").

In this duty to defend case, we first address the scope of potential coverage, accepting Great American's concession that the Noll action potentially falls within coverage for use of another's advertising idea, but rejecting Street Surfing's argument that the action would also fall within the policies' coverage for slogan infringement.  Next, we hold that the prior publication exclusion relieves Great American of its duty to defend Street Surfing in the Noll action because the extrinsic evidence available to Great American at the time of tender conclusively establishes: (1) that Street Surfing published at least one advertisement using Noll's advertising idea before coverage began; and (2) that the new advertisements Street Surfing published during the coverage period were substantially similar to that pre-coverage advertisement.  Accordingly, we affirm the district court's grant of summary judgment to Great American.

## A.  The Noll action potentially falls within the policies' coverage.

In resolving insurance coverage disputes, before "considering exclusions, a court must examine the coverage provisions to determine whether a claim falls within [the policy terms]."  *Waller*, 900 P.2d at 625 (alteration in original) (quoting *Hallmark Ins. Co. v. Superior Court*, 247 Cal. Rptr. 638, 639 (Ct. App. 1998)) (internal quotation marks omitted).  We accept Great American's concession, for purposes of summary judgment, that the Noll action potentially falls within the policies' coverage of injuries

arising from "[t]he use of another's advertising idea in [Street Surfing's] 'advertisement.'"

We reject Street Surfing's contention that the Noll action also falls within the policies' slogan infringement liability coverage, which extends to injuries arising out of "infringing upon another's . . . slogan in [Street Surfing's] 'advertisement.'"[4]    Interpreting a similar provision, the California Supreme Court defined a "slogan" as "'a brief attention-getting *phrase* used in advertising or promotion' or '[a] *phrase* used repeatedly, as in promotion,'" but recognized that "there may be instances where the name of a business, product or service, by itself, is also used as a slogan." *Palmer v. Truck Ins. Exch.*, 988 P.2d 568, 576 & n.9 (Cal. 1999) (quoting Webster's Collegiate Dictionary 1105 (10th ed. 1993); American Heritage College Dictionary 1282 (3d ed. 1993)).

Although "Streetsurfer" arguably could be used as such a slogan, Street Surfing has not identified "any instance of such a use that would have been readily ascertainable by [Great American] at the time the claim was filed," and specifically, nothing in the complaint or in the extrinsic evidence suggests that Noll ever used "Streetsurfer" as a slogan. *Interstate Bakeries Corp. v. OneBeacon Ins. Co.*, 686 F.3d 539, 546 (8th Cir. 2012).    Street Surfing's circumstances are distinguishable from *Hudson Insurance Co. v. Colony Insurance Co.*, 624 F.3d 1264 (9th Cir. 2010),

---

[4] We address this argument despite Great American's concession because we interpret the prior publication exclusion in light of the nature of potential coverage. *See infra* p. 14–15 (citing *Ringler Assocs., Inc. v. Md. Cas. Co.*, 96 Cal. Rptr. 2d 136, 147–48 (Ct. App. 2000)) and p. 23 note 10.

where the third party's complaint alleged infringing use of the phrase "Steel Curtain," which we readily recognized as a slogan, "a brief attention-getting phrase," that was used to promote fan loyalty in pro football's Pittsburgh Steelers. *Id.* at 1268. In contrast, when Great American reviewed the allegations in Noll's complaint, it would have ascertained only that Noll used "Streetsurfer" as a recognizable brand name to identify his products, not as a phrase promoting that brand.[5] Because Street Surfing points to no facts alleged in the complaint or otherwise that would have given rise to an inference that slogan infringement would be at issue in the Noll action, its claim for coverage under that provision fails. *See Interstate Bakeries*, 686 F.3d at 546 (holding that the third-party complaint did not fall within the policy's slogan infringement coverage because, although "it is conceivable that 'Nature's Own' could serve as a slogan," the complaint made no "specific allegation relating to such a use" and the insured had not shown that the insurer otherwise knew of such a use). Street Surfing's purported use of "Street Surfing" as a slogan in its *own* advertising is irrelevant. The policies' coverage extends only to Street Surfing's infringement of *another's* slogan.

---

[5] The only allegations concerning Noll's use of his trademark in his complaint were:

> 13. Plaintiff is a skateboard manufacturer who, since at least 1994, has manufactured and sold skateboards, and skateboard accessories, including riser pads, wheels and clothing, under the trademark STREETSURFER.

> . . . .

> 17. Plaintiff's STREETSURFER mark is well-known as designating Plaintiff's goods and is a valuable asset of Plaintiff.

We therefore conclude that the Noll action potentially fell within the policies' coverage, triggering Great American's duty to defend under the advertising injury provision, but not under the slogan infringement provision.

## B. The prior publication exclusion applies to the Noll action.

We must next consider whether the district court correctly concluded that the prior publication exclusion relieves Great American of its duty to defend.**[6]**     The policies' prior

---

**[6]** Equitable estoppel does not bar Great American from raising this defense even though it neither cited the exclusion when it denied coverage nor specifically refuted Street Surfing's argument that the exclusion did not apply.  "An insurer can be estopped from raising coverage defenses if, knowing of the grounds of non-coverage, it provides a defense under the policy without a reservation of rights, and the insured reasonably relies on this apparently unconditional defense to [its] detriment." *State Farm Fire & Cas. Co. v. Jioras*, 29 Cal. Rptr. 2d 840, 844 (Ct. App. 1994).  At a minimum, the insured must show that the insurer's conduct caused both (1) a reasonable belief that the insurer would provide coverage and (2) detrimental reliance on that conduct.  *See id.* at 845.  There is no evidence that either of these conditions was met with respect to Great American ultimately asserting the prior publication exclusion. Significantly, Great American's letters explicitly reserved its rights to "assert any and all other terms, provisions, conditions and/or exclusions set forth in its policies which may be applicable to the *Noll* action."

Street Surfing contends its argument is supported by *City of Hollister v. Monterey Insurance Co.*, 81 Cal. Rptr. 3d 72 (Ct. App. 2008), but that case is inapposite.  There, the California Court of Appeal held the evidence supported a finding that the insurer "actively interfered" with the insured's ability to comply with the very condition asserted by the insurer as a basis for denying coverage.  *Id.* at 101.  Here, the insurer did not engage in similarly "blameworthy or inequitable conduct" when it denied coverage on certain grounds, reserved its rights and relied on additional grounds during litigation.  *Id.* at 98.

publication exclusion exempts from coverage "'[p]ersonal and advertising injury' arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." The straightforward purpose of this exclusion is to "bar coverage" when the "wrongful behavior . . . beg[a]n prior to the effective date of the insurance policy." *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1072 (7th Cir. 2004); *see also Kim Seng Co. v. Great Am. Ins. Co.*, 101 Cal. Rptr. 3d 537, 548 (Ct. App. 2009) ("The purpose of the prior publication exclusion is to preclude coverage for risks that have already materialized . . . .").

In the context of advertising injury coverage, an allegedly wrongful advertisement published before the coverage period triggers application of the prior publication exclusion. *See infra* section B.1. If this threshold showing is made, the exclusion bars coverage of injuries arising out of republication of that advertisement, or any substantially similar advertisement, during the policy period, because such later publications are part of a single, continuing wrong that began before the insurance policy went into effect. *Cf. Ringler Assocs., Inc. v. Md. Cas. Co.*, 96 Cal. Rptr. 2d 136, 150 (Ct. App. 2000). If a later advertisement is not substantially similar to the pre-coverage advertisement, however, it constitutes a distinct, or "fresh," wrong that does not fall within the prior publication exclusion's scope. *See Kim Seng*, 101 Cal. Rptr. 3d at 546–48.

---

We also decline Street Surfing's invitation to apply Illinois' "mend the hold" doctrine, *see Harbor Ins. Co. v. Cont'l Bank Corp.*, 922 F.2d 357, 362-65 (7th Cir. 1990) (describing the doctrine and its history), because California law has never incorporated it or applied the doctrines of waiver or estoppel to achieve functionally equivalent results.

Street Surfing argues that Great American has not met its burden of proving that the prior publication exclusion applies for two reasons. First, Street Surfing argues that the prior publication exclusion does not apply *at all* because neither the Noll complaint nor the extrinsic evidence available to Great American at the time of tender conclusively established that Street Surfing used Noll's advertising idea in its own advertisements before coverage began in August 2005. Street Surfing further contends that even if it published such pre-coverage advertisements, Great American's duty to defend was separately triggered by new Street Surfing advertisements published during the policy period using Noll's advertising idea, because the advertisements were not substantially similar to any pre-coverage advertisements. We address these two arguments in turn.

### 1. Street Surfing published at least one advertisement using Noll's advertising idea before coverage began.

The policies' prior publication exclusion is triggered only if the insured published allegedly injurious material before the beginning of the policy period. The California Court of Appeal interpreted the scope of an identical exclusion in *Ringler* by looking to the nature of the potential coverage. *See* 96 Cal. Rptr. 2d at 147–48 (interpreting the exclusion "in the context of the law of defamation" because "[o]nly the underlying lawsuits' ancillary claims of defamation potentially fell within the Policy's 'personal' or 'advertising' injury coverage"). In this case, the potential coverage is for injuries arising out of "[t]he use of another's advertising idea in [Street Surfing's] 'advertisement.'" Because this provision specifies the covered injuries in the policies' own terms, we

can interpret the policies' prior publication exclusion without looking to underlying principles of substantive law.

Here, the Noll action is potentially covered because it alleged that Street Surfing's advertisements using its "Street Surfing" logo and brand name were wrongful uses of "Streetsurfer" – Noll's advertising idea.  Accordingly, if Street Surfing used its brand name or logo in an advertisement (as defined by the policy) before August 2005, the prior publication exclusion would bar coverage of injuries from the republication of that advertisement after August 2005.[7]

To determine whether Street Surfing used Noll's advertising idea in its own advertisements before coverage began, the district court looked to the Noll complaint and three items of extrinsic evidence: the affixation of the Street Surfing logo to the Wave, Street Surfing's website address and the screenshot of Street Surfing's website content.  We

---

[7] The policies define an "advertisement" as:

> [A] notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.  For the purposes of this definition:
>
> a.   notices that are published include material placed on the Internet or on similar electronic means of communication; and
>
> b.   regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

conclude that affixing the Street Surfing logo to the Wave was an advertisement using Street Surfing's brand name and logo. Because the Street Surfing logo was published on the Wave before coverage began, the prior publication exclusion bars coverage of injuries caused by that affixation during the policies' coverage periods. Accordingly, we need not decide whether Street Surfing's website address and content also constituted advertisements under the policy.

### a. Noll Complaint

We agree with Street Surfing that the Noll complaint itself does not establish that Street Surfing used Noll's advertising idea in advertisements that were published before August 2005. The complaint alleged that the challenged conduct occurred "since at least on or about January of 2005, *or such other date as may later be determined.*" These allegations explicitly leave open the possibility that the challenged conduct occurred at "such other date as may later be determined." After discovery, the evidence could have established that the challenged conduct actually started after coverage began in August 2005. *See CNA Cas. of Cal. v. Seabord Sur. Co.*, 222 Cal. Rptr. 276, 284–85 (Ct. App. 1986) (holding that there was a potential for coverage when the policy period began in November 1969 and the underlying complaint challenged a course of conduct beginning in 1966, because no dates were alleged for the specifically listed wrongful acts). Thus, the Noll complaint on its face does not prove that Street Surfing used Noll's advertising idea before the coverage period began.

### b. Logo on the Wave

We therefore turn to whether extrinsic evidence "presents undisputed facts which conclusively eliminate a potential for liability," *Montrose*, 861 P.2d at 1159–60 (internal quotation marks omitted), and conclude that it does.  Specifically, extrinsic evidence shows that Street Surfing affixed its logo to the Wave before August 2005, constituting "a notice that is broadcast or published to the general public . . . about your goods, products or services for the purpose of attracting customers or supporters," the policies' definition of an advertisement.[8]

Street Surfing's insurance application, filed before coverage began, certified that "[a]ll products display the Street Surfing Logo."  At the time, its only product was the Wave, although new products were in progress, and it had earned about $600,000 in sales of the Wave, primarily to retailers.  Affixing the Street Surfing logo to the Wave thereby "published" that logo to the general public through displays of the Wave in retail stores.  *See Rombe Corp. v Allied Ins. Co.*, 27 Cal. Rptr. 3d 99, 106 n.4 (Ct. App. 2005) (interpreting an identical definition of "advertising" and defining "publish" as "to call to the attention of the public" (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1837 (1981)).  Because the record does not include a description or depiction of the logo affixed to the Wave, we cannot draw any conclusions about what that logo, standing alone, may have communicated to the public. Nevertheless, we agree with the district court that affixing

---

[8] Street Surfing does not dispute that using a logo in this fashion constitutes a "notice" under the policies.  We therefore assume without deciding that it does.

Street Surfing's logo *to the Wave* published information about Street Surfing's products by informing the public of the Wave's origin for the purpose of attracting future customers who might like what they saw. Accordingly, the logo constituted an "advertisement" under the policies. Because the logo advertisement predated coverage and used the term "Street Surfing," which the underlying complaint alleged was a wrongful use of Noll's advertising idea, "Streetsurfer," the prior publication exclusion applies to any injuries arising from affixing the logo on the Wave during the coverage period.

**2.  The advertisements Street Surfing published during the coverage period fall within the scope of the prior publication exclusion because they are substantially similar to its pre-coverage affixation of its logo to the Wave.**

Street Surfing contends that even if the prior publication exclusion bars coverage of liability for pre-coverage advertisements using Noll's advertising idea, Great American was still obligated to defend the Noll action because Street Surfing published new, post-coverage advertisements using Noll's advertising idea that were not substantially similar to any advertisements published before the policy period. Even assuming that affixing the Street Surfing logo to the Wave was the only pre-coverage advertisement, we are not convinced.

The *Ringler* court explained that the prior publication exclusion "bar[s] coverage of republication of any identifiably defamatory 'material' whenever the first publication *of substantially the same material* occurred before the inception of the policy period, without regard to whether

or not the defamatory material is literally restated in precisely the same words."  96 Cal. Rptr. 2d at 150.  This concept was further explained in *Kim Seng*, which held that the prior publication exclusion does not preclude coverage if, during the coverage period, the insured publishes "new matter" constituting "fresh wrongs" in the underlying liability suit. *See* 101 Cal. Rptr. 3d at 547.  That is, "new matter" is material that is not "substantially similar" to the material published before the coverage period.  *See id.*

To assess substantial similarity, courts have not considered *all* differences between pre-coverage and post-coverage publications, but have focused on the relationship between the alleged *wrongful acts* manifested by those publications.  A post-coverage publication is "substantially similar" to a pre-coverage publication if both publications carry out the same alleged wrong.  *See, e.g.*, *Taco Bell*, 388 F.3d at 1073 (explaining that if an article infringing a copyright was published before coverage, but was republished during the coverage period as part of an anthology, "[t]he anthology would be a different . . . work from the magazine, but the wrongful act – the copying of the copyrighted article without authorization – would be the same and so the prior-publication exclusion would . . . click in").  Focusing on the alleged wrongful acts fulfills the prior publication exclusion's purpose of barring coverage when "the wrongful behavior had begun prior to the effective date of the insurance policy."  *Id.* at 1072.

In *Kim Seng*, the California Court of Appeal applied this framework when it considered whether the insurer was obligated to defend and indemnify the insured in an action alleging infringement of the trademark "Que Huong."  *See* 101 Cal. Rptr. 3d at 541–42.  The infringement allegations in

the complaint were based on the insured's pre-coverage use of the marks "Que Huong" and "Old Man Que Huong Brand." *See id.* at 541, 545. The insured argued that the prior publication exclusion did not relieve the insurer of its duty to defend because the underlying action sought to enjoin new marks introduced during the policy period – including "'Bun Tuoi Hieu Que Huong Brand,' 'Bun Que Huong Dac Biet,' and a trademarked logo that included a water buffalo and the words 'Que Huong,'" *id.* at 540 – that differed from those it used before coverage began. *See id.* at 545. The court rejected that argument because "[t]he alleged wrongs before and during the policy period were the use of the words 'Que Huong,'" noting that "[t]he words added by [the insured] to 'Que Huong' during the policy period [were] merely product description." *Id.* at 547.

In contrast, the Seventh Circuit held in *Taco Bell* that the insurer had a duty to defend the insured's publication of "new matter that the plaintiff in the liability suit against the insured allege[d] as fresh wrongs." 388 F.3d at 1073. The plaintiff in the underlying suit alleged that it had "developed a marketing gimmick that it called 'Psycho Chihuahua,'" as well as several specific examples of that advertising idea – e.g., "the idea of a Chihuahua popping his head out through a hole at the end of a commercial." *Id.* at 1072. The insured, Taco Bell, developed a national advertising campaign based on the "Psycho Chihuahua" idea, airing some commercials for the first time before the coverage period, and others for the first time during the coverage period. *See id.* at 1072–73. The insurer argued that, although the post-coverage commercials were different from the pre-coverage commercials, the prior publication exclusion applied because all of the commercials used the same misappropriated "Psycho Chihuahua" idea. *See id.* at 1073.

The Seventh Circuit rejected the insurer's argument. *See id.* It acknowledged that if broadly construed, the "Psycho Chihuahua" idea would "encompass[] all the subordinate ideas embodied in the later commercials." *Id.* at 1074. Nevertheless, the court looked to the allegations in the underlying complaint "that those later commercials appropriated not only the 'basic idea' ('Psycho Chihuahua') but *other ideas as well that are protected by Michigan's common law of misappropriation*, like the idea of the Chihuahua's poking its head through a hole at the end of a commercial." *Id.* at 1073 (emphasis added). Because the underlying complaint "charge[d] the misappropriation of the subordinate ideas as separate torts, and those torts occurred during the period covered by [the insurer]'s policy," the court held that the prior publication exclusion did not bar coverage of the underlying action. *Id.* at 1074.

Street Surfing argues that this case is analogous to *Taco Bell* because, during the coverage period, it published advertisements for "Lime Green Street Surfing Wheels for the Wave" and the "New Ultimate Street Surfer Wheel Set," and these advertisements differed from any pre-coverage advertisements.[9] Conversely, Great American contends that this case is indistinguishable from *Kim Seng*. We conclude

---

[9] Street Surfing sent Great American these post-coverage advertisements with its letter contesting Great American's first denial of coverage, making Great American aware of these advertisements even though they were extrinsic to the complaint. Accordingly, if the advertisements created a potential for coverage, Great American would be obligated to defend the Noll complaint. *See Waller v. Truck Ins. Exch.*, 900 P.2d 619, 627 (Cal. 1995) ("It has long been a fundamental rule of law that an insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement.").

that Street Surfing's post-coverage advertisements are substantially similar to its pre-coverage advertisement and therefore that the prior publication exclusion precludes coverage of the Noll action.

Unlike the underlying complaint in *Taco Bell*, the Noll complaint does not mention any specific advertisements. Instead, it makes general allegations that Street Surfing injured Noll by using the Street Surfing name and logo on the Wave and in its advertisements. In particular, the Noll complaint does not allege that the post-coverage advertisements were separate torts occurring during the policy period. One of the primary grounds for the Seventh Circuit's decision in *Taco Bell* is therefore not applicable here. *See* 388 F.3d at 1073–74.

More importantly, if Street Surfing's post-coverage publications were wrongful, that would be so for the same reason its pre-coverage advertisement was allegedly wrongful: they used Noll's advertising idea in an advertisement. Whether that idea was manifested specifically as "Street Surfing" or as "Street Surfer" is not a meaningful differentiation, because the alleged wrong arose out of each term's similarity to Noll's advertising idea, "Streetsurfer." Arguably, "Street Surfer" and "Street Surfing" could each be viewed as a separate, subordinate version of the basic "Streetsurfer" idea. The extreme similarity between all these terms, however, convinces us otherwise. Rather, we are persuaded this is an instance where "a difference between the republished version of an unlawful work and the original version [is] so slight as to be immaterial." *Taco Bell*, 388 F.3d at 1073.

That the advertisements were for different products is also not a material distinction, because the advertising idea being used was the same regardless of the product. In *Taco Bell*, the material distinction was not between commercials for tacos and commercials for burritos, but between commercials that infringed one general idea allegedly protected by misappropriation law ("Psycho Chihuahua") and a separate, more specific idea that was also allegedly protected by misappropriation law (a Chihuahua poking its head through a hole). *See id.* at 1073. The distinct products being promoted in Street Surfing's post-coverage advertisements are more akin to the words of product description added to the marks during the policy period in *Kim Seng*; they differentiate the publications, but not the alleged wrongs, which were the same before and during the policy period. *See* 101 Cal. Rptr. 3d at 547. The difference in products is therefore also not material for purposes of the "fresh wrongs" analysis.

Accordingly, we conclude that Street Surfing's post-coverage advertisements are not fresh wrongs that escape application of the prior publication exclusion.[10]

## CONCLUSION

At its core, this case involves a company that began a wrongful course of conduct, obtained insurance coverage, continued its course of conduct, then sought a defense from its insurer when the injured party sued. Although "a liability

---

[10] Street Surfing's additional contention that it began using "Street Surfing" as a slogan only after coverage began is not convincing, because there is no potential coverage under the slogan infringement provision. *See supra* Part A.

insurer owes a broad duty to defend its insured against claims that create a potential for indemnity," *Horace Mann Ins. Co. v. Barbara B.*, 846 P.2d 792, 795 (Cal. 1993), the prior publication exclusion, strictly construed, serves to place reasonable limits on that broad duty. We therefore affirm the district court's grant of summary judgment in favor of Great American. We do not reach Great American's alternate arguments based on the IP exclusion and the AI amendment.

**AFFIRMED.**