101 P.3d 226

**AMCO INSURANCE COMPANY,**
an insurance corporation,
Plaintiff–Respondent,

v.

**TRI–SPUR INVESTMENT COMPANY,**
an Idaho corporation, a/k/a Tri–Spur Investments, Inc., and John Bowen, an individual, Defendants–Appellants.

No. 29551.

Supreme Court of Idaho,
Boise, May 2004 Term.

Oct. 20, 2004.

Rehearing Denied Nov. 17, 2004.

Troupis & Summer, Chtd., Meridian, for appellants. Jay P. Clark argued.

Tolman Law Office, Twin Falls, for respondent. John O. Fitzgerald, II argued.

SCHROEDER, Chief Justice.

The District Court of Madison County granted AMCO Insurance Company's (AMCO) motion for summary judgment, holding that AMCO has no duty to defend or indemnify Tri–Spur for claimed damages arising from alleged civil rights violations. Tri–Spur maintains that the district court erred in ruling that the claims made against Tri–Spur did not encompass potential liabilities covered under the AMCO policy and that the civil rights exclusion in the AMCO policy is ambiguous and therefore unenforceable against Tri–Spur.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

This case arose from litigation filed by the Equal Employment Opportunity Commission ("EEOC") against Tri–Spur in the Federal District Court of Utah on September 29, 2000. In that case the EEOC alleges that Tri–Spur violated Title VII of the Civil Rights Act—42 U.S.C. § 2000e ("Title VII")—and seeks "redress for unlawful sexual discrimination, sexual harassment and retaliation against a class of women."[1] Subsequently, Crystle Collins ("Collins") filed a complaint and amended complaint in intervention (collectively referred to as the "Utah Litigation").

Tri–Spur tendered defense of Collins' "non sexual harassment claims" to Allied Insurance Company pursuant to a policy of insurance (the "Policy"). Correspondence ensued between the insurer, AMCO, and attorneys representing Tri–Spur. Initially AMCO denied coverage but finally agreed to provide a defense reserving the right to seek declaratory relief.

AMCO filed this action seeking a declaratory judgment that it has no obligation to defend or indemnify Tri–Spur in the Utah litigation. Tri–Spur answered, claiming that

---

1. *Equal Employment Opportunity Commission v. Sbarro's Italian Eatery and Tri–Spur Investments, Inc.,* IN THE UNITED STATED DISTRICT COURT OF UTAH, CENTRAL DIVISION: Case # 2: 00CV00774B. (Exhibit B to Plaintiff's com- plaint.) This complaint was amended in September of 2001: *Equal Employment Opportunity Commission v. Tri–Spur Investment Comapn, Inc., Tri–Spur L.L.C. and Berkley Corporation, dba Sbarro's Italian Eatery.*

AMCO is obligated to defend the Utah litigation and indemnify against resultant damages. Tri–Spur has also moved to amend its answer to include a counter-claim alleging bad faith based on AMCO's course of action subsequent to the filing of the Utah case.

Both parties filed for summary judgment: AMCO seeking relief from any further obligation to defend or indemnify Tri–Spur in the Utah Litigation; Tri–Spur seeking a declaration of AMCO's contractual duty of defense and indemnification in Utah.

The district court granted AMCO's motion for summary judgment.

## II.

### RELEVANT PORTIONS OF THE POLICY

**COVERAGE D—BUSINESS LIABILITY**

1. We will pay those sums that you become legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under the **COVERAGE EXTENSION—SUPPLEMENTARY PAYMENTS** provision of this policy.

This insurance applies only:

  a. To "bodily injury" or "property damage":

    1) That occurs during the policy period; and

    2) That is caused by an "occurrence". The "occurrence" must take place in the "coverage territory."

  b. To "personal injury" caused by an offense:

    1) Committed in the "coverage territory" during the policy period; and

    2) Arising out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you.

  c. To "advertising injury" caused by an offense committed:

    1) In the "coverage territory" during the policy period; and

    2) In the course of advertising your goods, products, or services.

2. We will have the right and duty to defend any "suit" seeking those damages. But

  a. The amount we will pay for damages is limited as described in the **BUSINESS LIABILITY AND MEDICAL EXPENSE LIMITS OF INSURANCE** provision of this policy;

  b. We may investigate and settle any claim or "suit" at our discretion; and

  c. Our right and duty to defend ends when we have exhausted the applicable limit of insurance in the payment of judgments or settlements or medical expenses.

3. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

4. "Property damage" that is loss of use of tangible property this is not physically injured will be deemed to occur at the time of the "occurrence" that caused it.

**BUSINESS LIABILITY AND MEDICAL EXPENSES DEFINITIONS**

1. "Advertising Injury" means injury arising out of one or more of the following offenses:

  a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

  b. Oral or written publication of material that violates a person's right to privacy;

  c. Misappropriation of advertising ideas or style of doing business; or

  d. Infringement of copyright, title or slogan.

. . . .

3. "Bodily Injury" means bodily injury, sickness or disease sustained by a per-

son, including death resulting from any of these at any time.

4. "Coverage Territory" means:

. . . .

c. All parts of the world if:

1) The injury or damage arises out of:

a) Goods or products made or sold by you in the territory described above; or

b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

. . . .

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal Injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. Wrongful eviction from wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication or material that violates a person's right of privacy.

. . . .

15. "Property Damage" means

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that cause it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

## BUSINESS LIABILITY AND MEDICAL EXPENSES EXCLUSIONS

1. With regard to **BUSINESS LIABILITY** coverage, this insurance does not apply to:

e. "Bodily injury" to:

1) A present or former "employee" of the insured arising out of and in the course of present or former employment by the insured; or

2) The spouse, child, parent, brother or sister of that "employee" or former "employee" as a consequence of 1) above.

3) Any person arising out of any federal, state or governmental civil rights violations or alleged violations.

This exclusion applies:

1) Whether the insured may be liable as an employer or in any other capacity; and

2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

## III.

## THE DISTRICT COURT PROPERLY GRANTED AMCO'S REQUEST FOR SUMMARY JUDGMENT ON THE BASIS THAT AMCO HAS NO DUTY TO DEFEND OR INDEMNIFY TRI–SPUR IN THE UTAH LITIGATION

### A. Standard of Review

▮ The standard of review on appeal from an order granting summary judgment is the same standard that is used by the district court in ruling on the summary judgment motion. *Baxter v. Craney*, 135 Idaho 166, 170, 16 P.3d 263, 267 (2000). All disputed facts are to be liberally construed in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving

party. *Eagle Water Company, Inc. v. Roundy Pole Fence Company, Inc.,* 134 Idaho 626, 628, 7 P.3d 1103, 1105 (2000). Summary judgment is appropriate only when the pleadings, depositions, affidavits and admissions on file show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. I.R.C.P. 56(c).

### B. Duty to Defend

■■■ "The duty to defend arises upon the filing of a complaint whose allegations, in whole or in part, read broadly, reveal a potential for liability that would be covered by the insured's policy." *Hoyle v. Utica Mut. Ins. Co.,* 137 Idaho 367, 371–72, 48 P.3d 1256, 1260–61 (2002). *Constr. Mgmt. Sys., Inc. v. Assurance Co. of Am.,* 135 Idaho 680, 682, 23 P.3d 142, 144 (2001); *Union Warehouse & Supply Co., Inc. v. Illinois R.B. Jones, Inc.,* 128 Idaho 660, 667, 917 P.2d 1300, 1307 (1996); *Kootenai County v. W. Cas. and Sur. Co.,* 113 Idaho 908, 910, 750 P.2d 87, 89 (1988) (citing *State of Idaho v. Bunker Hill Co.,* 647 F.Supp. 1064, 1068 (D.Idaho 1986)). How and when an insurer must determine its potential for liability and duty to defend has also been established:

> The problem that faces the insurers when a claim is made is determining if there is a potential for liability. However, ... since the advent of notice pleading there will likely be broad ambiguous claims made against the insured making it more difficult for the insurer to determine whether the insurance policy covers the claims.... [W]here there is doubt as to whether a theory of recovery within the policy coverage has been pleaded in the underlying complaint, or which is potentially included in the underlying complaint, the insurer must defend regardless of potential defenses arising under the policy or potential defenses arising under the substantive law under which the claim is brought against the insured. It is a misconception of the duty to defend, however, if the insurer refuses to defend and seeks a determination of the duty while the underlying case progresses against the insured, and then if found obligated under its duty, the insurer merely steps in and defends and pays defense fees that have accumulated. The

> proper procedure for the insurer to take is to evaluate the claims and determine whether an arguable potential exists for a claim covered by the policy; if so, then the insurer must immediately step in and defend the suit.

*Hoyle, 137 Idaho at 372, 48 P.3d at 1265, quoting Kootenai County,* 113 Idaho at 910–11, 750 P.2d at 89–90.

The relevant coverage provisions under the Policy are found in SECTION II—LIABILITY COVERAGE FORM. The Policy states:

> We will pay those sums that you become legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under the **COVERAGE EXTENSION—SUPPLEMENTARY PAYMENTS** provision of this policy.

The Policy specifically excludes "bodily injury" to any person arising out of any federal state or any governmental civil rights violations or alleged violations.

The following claims are made in the Complaints under Section 703(a) of Title VII, 42 U.S.C. § 2000e–2(a):

1) Subjecting women to a hostile work environment due to sexual harassment and gender based harassment,

2) Failing to take immediate and appropriate action to correct the hostile work environment,

3) Unlawful retaliation on the part of Tri–Spur by terminating charging parties and a class of women when they complained about the sexual harassment,

4) Tri–Spur engaged in the unlawful employment practices outlined above in reckless indifference to the federally protected rights of the charging parties and a class of females.

Collins and the EEOC sought the following remedies:

1) Enjoin Tri–Spur and its various operations from engaging in discrimination on the basis of sex or retaliation,

738

2) Order Tri–Spur to ensure that it will provide equal employment opportunities for females and which will eradicate the effects of their past and present unlawful employment practices,

3) Order Tri–Spur to make whole charging parties and a class of similarly situated females. by providing appropriate back pay with prejudgment interest, providing compensation for past and future pecuniary losses, making parties whole for emotional pain, suffering, loss of enjoyment of life, and humiliation.

4) Punitive damages for their malicious and/or reckless disregard of federally protected rights,

5) Grant further relief as the Court deems necessary and proper,

6) Award the EEOC and Collins costs and attorneys' fees.

■ All claims and all of the relief sought are based on Title VII. Tri–Spur asserts that the facts behind the pleadings also reveal potential causes of action for assault, battery, false imprisonment, slander, negligent supervision, intentional and/or negligent infliction of emotional distress and invasion of privacy. As the Court stated in *Hoyle*, even if the facts behind the Complaints might lead to these causes of action, it is irrelevant:

> [The parties] assert the facts behind FSI's pleading · reveal negligent acts. **Even if the facts behind the FSI complaint might disclose negligent acts, it is irrelevant.** This Court has previously rejected this argument in *Construction Management v. Assurance Company of America,* [citation omitted]. **Pursuant to *Construction Management,* an insurer does not have to look beyond the words of the complaint to determine if a possibility of coverage exists.**

*Hoyle,* 137 Idaho at 373–74, 48 P.3d 1256 (emphasis added). Regarding the "notice pleading" rule, the Court continued:

> It makes little sense to require an insurer to defend a lawsuit simply because a complaint, with no covered claims, could potentially be amended to include covered claims. If this were true, an insurer would be required to defend every lawsuit re-

gardless of the allegations. The better rule is that if there is a subsequent change in the pleadings, a duty to defend may arise and the issue of the duty to indemnify would likewise come before the court again.

*Id.* at 375–76, 48 P.3d 1256.

In ruling on the motions for summary judgment the district court set forth the following analysis:

> The pleadings filed by the EEOC, in Utah, are based entirely on a violation of Title VII seeing "redress for unlawful sexual discrimination, sexual harassment and retaliation against a class of women." Such claims are clearly excluded by the plain language of the policy referenced herein and AMCO has no contractual duty to defend or indemnify against them.
>
> Crystle Collins' amended complaint, assuming the accuracy of the facts pled therein, contain assertions in paragraphs 21–62 that could arguably support a claim for damages based on "bodily injury" arising from an "occurrence." Those factual assertions, however, are pled exclusively as support for her claim that her civil rights were violated i.e., "First Cause of Action (Violation of Title VII—Sexual Harassment)" . . .

In *Hoyle,* the Court decided a case in which one party argued similarly that even though certain claims were not in the pleadings, the facts would support the claims had the plaintiff decided to pursue them. The Court made this statement:

> We agree with the district judge that FSI's complaint contained only claims for fraudulent, improper and illegal acts, and therefore the coverage under the Utica and ERC policies does not give rise to a duty to defend.

*Id.* 137 Idaho at 373, 48 P.3d 1256.

In this case the claims in the complaint are clear. Each claim and remedy refers specifically to Title VII and in no way contemplates any of the causes of action speculated by Tri–Spur, i.e., assault, · battery, false imprisonment, slander, negligent supervision, intentional and/or negligent infliction of emotional distress or invasion of privacy. The liberal

construction of a complaint in notice pleading is to avoid dismissal of an inartfully drawn complaint that gives adequate notice of the claims sought to be asserted. That principle is not applicable in this case in which there is a clearly drawn complaint that sets forth very specific claims and remedies.

### C. The provisions of the policy are not ambiguous.

▮ Tri–Spur argues that the portion of the policy excluding "bodily injury" but not "personal injury" creates an ambiguity that should make the provision void. Tri–Spur points out that this exclusion would not include "personal injuries" but would include "bodily injuries" arising from civil rights violations, and as such, the provision should be deemed ambiguous and ineffective.

▮ "Insurance policies are a matter of contract between the insurer and the insured." *Gordon v. Three Rivers Agency, Inc.*, 127 Idaho 539, 542, 903 P.2d 128, 131 (Ct.App.1995) (citing *Brinkman v. Aid Ins. Co.*, 115 Idaho 346, 352, 766 P.2d 1227, 1233 (1988)). Whether a contract is ambiguous presents a matter of law subject to free review by this Court. *DBSI/TRI V v. Bender*, 130 Idaho 796, 802, 948 P.2d 151, 157 (1997) (citation omitted). Ambiguity exists when a contract term is reasonably susceptible to more than one interpretation. *Id.* at 803, 948 P.2d at 158. If a policy term is ambiguous, this Court construes it "liberally in favor of recovery, with all ambiguities being resolved against the insurer." *Gordon*, 127 Idaho at 542, 903 P.2d at 131 (citing *Foremost Ins. Co. v. Putzier*, 102 Idaho 138, 142, 627 P.2d 317, 321 (1981); *Ryan v. Mountain States Helicopter, Inc.*, 107 Idaho 150, 153, 686 P.2d 95, 98 (Ct.App.1984)).

In this case, the question is whether the language of the civil rights violation exclusion is susceptible to more than one interpretation, or whether the provision unambiguously excludes "bodily injury" to any person arising out of any federal, state or governmental civil rights violations or alleged violations. The plain, unambiguous language of the insurance contract unambiguously excludes coverage for "bodily injuries" to any person arising out of civil rights violations. The

Policy is not ambiguous and application of the exclusion must be made in accordance with the plain meaning of the words used.

### IV.

### ATTORNEY FEES

▮ AMCO seeks attorney fees under I.C. §§ 41–1839, 12–121 and 12–123, asserting that Tri–Spur is asking the Supreme Court to merely second guess the district court's application of legal principles that are well settled. This Court has addressed similar situations and has previously rejected most of the arguments offered by Tri–Spur in *Hoyle* as well as other cases. See *Constr. Mgmt. Sys., Inc. v. Assurance Co. of Am.*, 135 Idaho 680, 682, 23 P.3d 142, 144 (2001). However, in *Union Warehouse & Supply Co., Inc. v. Illinois R.B. Jones, Inc.*, 128 Idaho 660, 667, 917 P.2d 1300, 1307 (1996) the Court determined that read broadly the complaint contained some covered claims. Tri–Spur was sued for violations of Title VII and only those remedies available under that act were sought. These specific causes of action fall within the civil rights coverage exceptions found in the Policy. However, the argument that the complaint should be read broadly to encompass other claims is not frivolous, unreasonable or without foundation, though in error considering the complaint in this case. The claim for attorney fees is denied.

### V.

### CONCLUSION

The decision of the district court that AMCO has no duty to defend or indemnify Tri–Spur for claimed damages arising from alleged civil rights violations under the provisions Title VII for sexual harassment and retaliation is affirmed. AMCO is awarded costs. No attorney fees are allowed.

Justice TROUT, Justices KIDWELL, EISMANN and BURDICK concur.