In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1888

CAPITOL INDEMNITY CORP.,

*Plaintiff-Appellant,*

*v.*

ELSTON SELF SERVICE WHOLESALE GROCERIES, INC.,
LORILLARD TOBACCO CO., MASHOUR "MIKE" DUKUM,
IBRAHIM DUKUM, and DAVID DUKUM,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 6536—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED FEBRUARY 12, 2009—DECIDED MARCH 12, 2009

Before EASTERBROOK, *Chief Judge*, and FLAUM and
MANION, *Circuit Judges*.

FLAUM, *Circuit Judge.* In the litigation underlying
this case, Lorillard Tobacco Co. ("Lorillard") filed trade-
mark infringement, unfair competition, and Illinois Decep-
tive Trade Practices Act claims against Elston Self Service
Wholesale Groceries ("Elston"). Lorillard accuses Elston

and individual defendants of selling counterfeit ciga-
rettes bearing Lorillard's federal trademark registration,
NEWPORT®. Elston tendered the underlying complaint
to its liability insurer, Capitol Indemnity Corp. Capitol
Indemnity filed suit against defendants Elston, Lorillard,
Elston's owner Mashour "Mike" Dukum, and Elston
employees Ibrahim and David Dukum, seeking a declara-
tion that it has no duty to defend or indemnify Elston
and the Dukums in the underlying suit. The district court
granted partial summary judgment for Elston and the
Dukums. While the court declined to rule on Capitol
Indemnity's duty to indemnify, the court ruled that the
advertising injury clause in Capitol Indemnity's insur-
ance policy ("the Policy") requires that Capitol Indem-
nity defend Elston in the underlying lawsuit, and no
exclusions in the policy negate this duty to defend.
Capitol Indemnity appealed, and we now affirm.

## I. Background

Elston is a distributor of wholesale merchandise, in-
cluding cigarettes. In July 2003, federal marshals raided
Elston and seized cigarettes. On July 9, 2003, Lorillard filed
suit against Elston. Lorillard later filed an amended
complaint naming the Dukums as additional defendants.
Lorillard's claims arise from the alleged sale and offer
for sale of counterfeit cigarettes bearing the Newport
trademark. Lorillard accuses Elston and the Dukums of
misappropriating Lorillard's federally registered trade-
marks as well as the goodwill associated with them. In
its amended complaint, Lorillard asserts that Elston and

the Dukums infringed Lorillard's marks in violation of 15 U.S.C. § 1114(1) (Count I); falsely designated or misrepresented goods being sold in violation of 15 U.S.C. § 1125(a) (Count II); diluted Lorillard's marks in violation of 15 U.S.C. § 1125(c) and 765 ILCS 1036/65 (Counts III and IV, respectively); engaged in unfair competition in violation of Illinois common law (Count V); engaged in deceptive trade practices in violation of 815 ILCS 510/2 (Count VI); engaged in common law fraud (Count VII); and induced third parties to commit fraud (Count VIII). Lorillard seeks an injunction prohibiting further wrongful conduct; an order requiring defendants to deliver to Lorillard for destruction anything in their possession that bears the Lorillard marks, other than genuine Lorillard cigarettes; an accounting and disgorgement of profits from allegedly wrongful conduct; attorneys' fees; treble damages; statutory damages in lieu of actual damages; taxable costs of the action; and punitive damages. In the underlying litigation, Elston filed a third-party complaint, naming as third-party defendants Canstar and Cam-Kat and alleging that it purchased the allegedly counterfeit cigarettes from those two suppliers.

This action is limited to insurance coverage claims. Capitol Indemnity had insured Elston since 1993. It issued the Policy implicated in this case, number BP00044456, to Elston for the period from July 14, 2002 to July 14, 2003. On April 22, 2004, Elston submitted a claim for coverage under the Policy. Capitol Indemnity disclaimed any duty to indemnify or defend Elston in the underlying lawsuit on May 5, 2005.

It is important to note that there is no allegation or evidence that any cigarettes at issue in the underlying case were purchased prior to the 2002 inception of the Policy.

In the Policy, Capitol Indemnity committed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' 'personal injury,' or 'advertising injury' to which this insurance applies." The Policy affords Capitol Indemnity the right and duty to defend Elston against any suit seeking such damages, but it explicitly limits that right and duty to claims to which the insurance applies.

Advertising injury is most relevant to this case. The policy defines advertising injury to include:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

The Policy also contains three exclusions that the district court found relevant to this case. First, the Policy contains an "intentional conduct" restriction, which dictates that the Policy's coverage does not apply to advertising injury "[a]rising out of oral or written publication of material, if done by or at the direction of the

insured with knowledge of its falsity." Second, the Policy includes a "prior publication" restriction: the "insurance does not apply to 'personal injury' or 'advertising injury' [a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period." Finally, the Policy contains a relief exclusion, specifying that it "covers only compensatory damages" and specifically excludes punitive damages, exemplary damages, or statutory damages.

In its third amended complaint, Capitol Indemnity sought six declarations: (1) The underlying lawsuit does not contain allegations that constitute advertising injury under the Policy; (2) The underlying lawsuit does not contain allegations that constitute personal injury under the Policy; (3) There is no coverage in the underlying lawsuit because every count of Lorillard's Amended Complaint alleged intentional acts or false publications; (4) The Policy contains no coverage for the punitive or statutory damages Lorillard seeks; (5) The Policy contains no coverage for the equitable relief Lorillard seeks; and (6) The Policy's prior publication exclusion precludes coverage in this case.

The parties in this case filed cross motions for summary judgment, and on March 13, 2008, the district judge issued a memorandum opinion and order granting Elston's motion in part and denying it in part. The court declined to rule on Capitol Indemnity's duty to indemnify Elston or the Dukums. The district court ruled that Capitol Indemnity owed no duty to defend the underlying complaint under the "personal injury" cover-

age grant in its policy, but that Capitol Indemnity did owe a duty to defend under the "advertising injury" coverage grant in the Policy. The court reasoned that the injuries alleged in the Lorillard amended complaint potentially assert advertising injuries within the scope of the Policy. The advertising injury clause covers infringement of "copyright, title, or slogan," and it covers "[m]isappropriation of advertising ideas." The court held that title infringement could include trademark infringement, and it reasoned that trademark infringement is a misappropriation of advertising ideas.

The district court also concluded that none of the above-referenced exclusions eliminated Capitol Indemnity's duty to defend. Most relevant to this appeal, the court further reasoned that the prior publication exception did not apply because, even though advertising and sales took place long before the Policy's coverage period began in 2002, there was nothing in the record to indicate when the defendant started selling counterfeit rather than genuine Newport cigarettes. In addition, the court held that neither the exclusion for allegedly intentional acts nor the relief exclusion applied.

## II.  Analysis

As noted above, the Policy provides coverage for alleged "advertising injuries" committed during the Policy period, but Capitol Indemnity's obligations under this section are not absolute because the Policy contains exclusions, including the prior publication exclusion. On appeal, Capitol Indemnity does not develop an argument

to dispute the district court's finding that the sale of counterfeit cigarettes can constitute "advertising injury" caused by an offense committed in the course of advertising. Therefore, Capitol Indemnity has waived this point, and we shall not address it. *See Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008); *Local 15, Int'l Bhd. of Elec. Workers v. Exelon Corp.*, 495 F.3d 779, 783 (7th Cir. 2007) ("'A party waives any argument that it does not raise before the district court or, if raised in the district court, it fails to develop on appeal.'" (quoting *Williams v. REP Corp.*, 302 F.3d 660, 666 (7th Cir. 2002))); *Doherty v. City of Chicago*, 75 F.3d 318, 326 (7th Cir. 1996). For the purposes of this opinion, we will assume that the injuries alleged in the Lorillard amended complaint potentially assert advertising injuries.

We recognize that Capitol Indemnity properly raises its argument that the district court erred and it is not obligated to defend Elston and the Dukums because the prior publication exclusion in the Policy voids coverage. We review this claim, which arises from a grant of summary judgment, de novo. *Peters v. City of Mauston*, 311 F.3d 835, 842 (7th Cir. 2002). We apply Illinois substantive law. Under Illinois insurance law, an insurer is obligated to defend its insured if the underlying complaint contains allegations that potentially fall within the scope of coverage. *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). In order to determine whether an insurer has a duty to defend its insured, we must compare the allegations in the underlying complaint to the language of the insurance policy. *Id.* "If the underlying complaint alleges

facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent." *Id.*

In this case, the underlying complaint alleges that Elston and the Dukums infringed the Lorillard trademarks at the point of sale when they sold non-Newport cigarettes that contained wrapping displaying the Newport trademark and that were packaged in boxes that displayed the mark. The underlying complaint does not allege that defendants used Lorillard's marks in an infringing manner in any other material. As noted, Lorillard does not allege that Elston sold any counterfeit cigarettes prior to the 2002 inception of the Policy. There is evidence that, to the consuming public, the trademarks on packaging and wrapping accompanying the allegedly counterfeit cigarettes would have appeared identical to trademarks on packaging and wrapping accompanying genuine Newport cigarettes.[1] Thus, our task is to consider whether the prior publication exclusion abrogates Capitol Indemnity's duty to defend because, prior to the Policy being issued, Elston sold genuine Newport cigarettes that contained packaging and wrapping displaying the Newport marks in a manner that appeared identical to the alleged counterfeits.

---

[1] Lorillard employed a fraud expert, who was able to distinguish Elston's allegedly counterfeit cigarettes from genuine Newport cigarettes based on his "specialized knowledge of Lorillard's packaging." Specifically, the expert found a discrepancy of 1/8 of an inch in the package's cellophane pull-tab length, and he found out-of-sequence product coding.

Capitol Indemnity argues that according to its plain language ("insurance does not apply to . . . 'advertising injury' [a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period"), the prior publication exclusion bars coverage in this case because "the same material," i.e., the cigarette packaging and wrapping containing the Newport trademarks, was first "published" by Elston before the Policy began in 2002. According to Capitol Indemnity, the word "material" in the exclusion refers to the words, logo, or other content which is published, not the legal effect of the publication.

We do not share Capitol Indemnity's interpretation of the prior publication exclusion. We understand the term "material" in the exclusion to refer to "injurious" material. By its terms, the prior publication exclusion abrogates the insurer's duty to defend only where it can prove that the insured's prior publication of the same actionable, injurious material alleged in the underlying complaint occurred prior to the beginning of its policy. This interpretation is logical because the exclusion exists to prevent an insured from purchasing an insurance policy to cover liability for illegal acts which it had undertaken prior to purchasing the policy. Put another way, the purpose of the exclusion is to prevent an individual who has caused an injury from buying insurance so that he can continue his injurious behavior.

We do not see any ambiguity in the meaning of the exclusion; it seems clear that the exclusion only abrogates the duty to defend where the insured's first publication

of actionable material occurred prior to the beginning of its policy. Nevertheless, even if there were ambiguity in the wording of the exclusion such that the exclusion were open to two interpretations, under Illinois law we would construe the terms of the Policy against Capitol Indemnity. *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005) (stating that when policy language is ambiguous, courts are to construe the terms of the policy against the insurer).

Our interpretation of the prior publication exclusion language is consistent with our reasoning in *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069 (7th Cir. 2004). In that case, we wrote:

> The purpose of the "prior publication" exclusion (a common clause in liability-insurance contracts, though rarely litigated) can be illustrated most clearly with reference to liability insurance for copyright infringement. Suppose a few months before insurance coverage began on October 7, 1997, the insured published an infringing book that it continued to sell after October 6. The "prior publication" exclusion would bar coverage because the *wrongful* behavior had begun prior to the effective date of the insurance policy. The purpose of insurance is to spread risk—such as the risk that an advertising campaign might be deemed tortious—and if the risk has already materialized, what is there to insure? (citation omitted). The risk has become a certainty.

*Taco Bell*, 388 F.3d at 1072-73 (emphasis added). In *Taco Bell*'s copyright hypothetical, it is the wrongful act that

triggers the prior publication exclusion. If the insured does not publish actionable material prior to the policy date, the prior publication exclusion will not apply, regardless of whether the insured publishes very similar material that is actionable after the policy inception.

In the litigation underlying this case, there is no allegation that Elston infringed Newport's trademarks prior to the inception of the Policy. That Elston "published" Lorillard's marks in a very similar manner both before and after the Policy date is of no import. The trademarks that Elston published on packaging and wrapping prior to the Policy date were not actionable, and thus the prior publication exclusion does not abrogate Capitol Indemnity's duty to defend Elston and the Dukums.

### III.  Conclusion

We AFFIRM the district court's partial grant of summary judgment. Capitol Indemnity has a duty to defend in the underlying litigation.