# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 45349

SCOUT, LLC, an Idaho limited liability
company, dba Double Tap Pub,

       Plaintiff-Appellant,

v.

TRUCK INSURANCE EXCHANGE, an
inter-insurance exchange organized under the
laws of the State of California,

       Defendant-Respondent,

and

FARMERS GROUP, INC., a California
corporation,

       Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
.

Boise, November 2018 Term

Filed: January 29, 2019

Karel A. Lehrman, Clerk

---

Appeal from the District Court of the Fourth Judicial District of the State of
Idaho, Ada County. Hon. Steven Hippler, District Judge.

The decision of the district court is <u>affirmed</u>.

Simmons Townsend, PLLC, Boise, for appellant.  Chynna C. Simmons argued.

Elam & Burke, P.A., Boise, for respondent. Jeffrey A. Thomson argued.

---

BRODY, Justice.

This case stems from Truck Insurance's refusal to defend its insured, Scout, LLC, in a trademark infringement action brought over Scout's use of the trademark ROGUE in the advertisement of its restaurant, Gone Rogue Pub. Scout claims that its use of ROGUE constituted an advertising injury that was covered by the insurance it purchased from Truck Insurance. Truck Insurance does not dispute that ordinarily Scout's advertising injury would be covered and it would accordingly have a duty to defend, but contends that in this situation coverage was

1

properly declined based on a prior publication exclusion found in the policy. The district court granted summary judgment to Truck Insurance after determining that a Facebook post of Scout's Gone Rogue Pub logo before insurance coverage began triggered the prior publication exclusion, thereby relieving Truck Insurance of the duty to defend Scout. Scout appeals the district court's decision granting Truck Insurance summary judgment. We affirm the judgment of the district court.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On October 1, 2012, Scout, an Idaho limited liability company, purchased *Casa Del Sol*, a downtown restaurant in Boise. The members of Scout decided to renovate the restaurant into a pub and brand it as *Gone Rogue Pub*. On October 10, Scout posted a public picture of the Gone Rogue logo on Facebook, accompanied by the words, "Here is our new logo! Signs are going up today and tomorrow! Hope everyone likes it! Let us know what you guys think!"  In the same month, Scout registered Gone Rogue Pub as an assumed business name with the Idaho Secretary of State. No other advertising or logos were displayed until after November 7, 2012.

On November 7, 2012, Scout requested a commercial business insurance policy through Truck Insurance and a policy was issued by Farmers Insurance. Scout then began the process of opening Gone Rogue Pub: obtaining an alcohol license, hanging signs, and ordering merchandise and glassware emblazoned with the Gone Rogue Pub logo. Gone Rogue Pub officially opened sometime around November 21, 2012.

All was well with Gone Rogue Pub until the Oregon Brewing Company (OBC) noticed Gone Rogue's similarity to its federally registered ROGUE trademarks. In January 2013, OBC informed Gone Rogue that it believed Gone Rogue was infringing on five of its registered ROGUE trademarks, including use of the mark in connection with: (1) beer and ale; (2) restaurant, pub and catering services; (3) beverage glassware; (4) beer; and, (5) clothing. All registrations predated Gone Rogue's use by at least two years. For a year-and-a-half OBC attempted to negotiate a deal with Gone Rogue, but to no avail.

In October 2014, OBC filed suit against Scout, alleging in part that "[i]n October 2012, long after OBC's first use and registration of the mark ROGUE, [Gone Rogue Pub] commenced use of the mark ROGUE as the name of their restaurant and bar." OBC asserted six different claims against Scout: (1) trademark counterfeiting under the Lanham Act; (2) trademark infringement; (3) unfair competition and false designation of origin under the Lanham Act; (4)

cyber-squatting under the Lanham Act; (5) unfair business practices under Idaho law; and, (5) common law trademark infringement. Exhibits were attached to the complaint featuring a host of screenshots from Scout's Facebook page showing Gone Rogue's marks. OBC sought injunctive relief, attorney fees and costs, and treble damages.

On December 3, 2013, Scout informed Truck Insurance of the OBC lawsuit and requested coordination for legal representation. Scout's liability policy included coverage for any "'advertising injury' . . . caused by an offense committed in the course of advertising your goods, products or services; but only if the offense was committed in the 'coverage territory' during the policy period." An advertising injury was defined as "[m]isappropriation of advertising ideas or style of doing business; or [i]nfringment of copyright, title or slogan." However, the policy was clear that Truck Insurance would "have no duty to defend the insured against any 'suit' seeking damages for . . . 'advertising injury'" to which the insurance did not apply.

Truck Insurance took the position that Scout's claim was not covered under the liability policy because of an exclusionary provision in the policy that denied coverage for any "'advertising injury' [a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period." The OBC complaint stated that the infringing activity began in October 2012—a month before Scout's liability coverage commenced——when Scout posted the Gone Rogue Pub logo on its Facebook page.

Not wanting to scuffle with OBC without assistance from Truck Insurance, Scout settled with OBC, agreeing to cease using ROGUE as a mark. Scout then rebranded "Gone Rogue Pub" as "Double-Tap Pub." A suit was thereafter brought by Scout against Truck Insurance alleging breach of contract, breach of the covenant of good faith and fair dealing, and bad faith failure to defend. After the parties conducted written discovery, Truck Insurance moved for summary judgment, arguing that there was no duty to defend, ergo no breach of contract. Scout countered with its own motion for summary judgment, contending that the prior publication exclusion was inapplicable to the OBC complaint, thus Truck Insurance breached its duty to defend Scout in the OBC suit.

The district court concluded that there was no duty to defend on Truck Insurance's part. A judgment was then entered dismissing Scout's claims with prejudice. Scout timely appealed the judgment. We affirm the judgment of the district court.

## II.    ISSUES ON APPEAL

3

**A.** Whether the district court properly granted summary judgment dismissing the breach of contract claims on its determination that no duty to defend existed because of the insurance contract's prior publication exclusion.

**B.** Whether the district court properly granted summary judgment dismissing the breach of implied covenant of good faith and fair dealing and bad faith claims on the grounds that there was no breach of contract.

**C.** Whether Scout is entitled to attorney fees on appeal under Idaho Code section 41-1839.

## III. STANDARD OF REVIEW

When reviewing a grant of a motion for summary judgment, this Court applies the same standard used by the district court in ruling on the motion. *Farm Bureau Inc. Co. of Idaho v. Kinsey*, 149 Idaho 415, 418, 234 P.3d 739, 742 (2010). "Summary judgment is properly granted when 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id.*; *see* Idaho R. Civ. P. 56. This Court liberally construes all disputed facts and draws all reasonable inferences from the record in favor of the nonmoving party. *Nettleton v. Canyon Outdoor Media, LLC*, 163 Idaho 70, 72–73, 408 P.3d 68, 70–71 (2017). "The moving party carries the burden of proving the absence of a genuine issue of material fact." *Id.* at 73, 408 P.3d at 71. Each party's motion for summary judgment is evaluated on its own merits; the filing of cross-motions for summary judgment does not establish the absence of genuine issues of material fact, nor does it transform the trial court that hears the motions into the trier of fact. *Id.*

## IV. ANALYSIS

**A. A duty to defend was not triggered because the prior publication exclusion removed any liability from Truck Insurance.**

The district court held that the prior publication exclusion in Truck Insurance's liability policy clearly and unambiguously excluded coverage for the allegations found in the OBC complaint when read broadly. The parties do not dispute that the allegations in the OBC complaint are advertising injuries covered by the business liability policy, but only dispute whether the prior publication exclusion allowed Truck Insurance to deny the duty to defend. The relevant portions of the insurance policy pertaining to coverage are as follows:

> **A. Coverages**
>    **1. Business Liability**

4

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "advertising injury" to which this insurance applies. We have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for. . . "advertising injury" to which this insurance does not apply.

. . .

**b.** This insurance applies:
**(2)** To:
**(b)** "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services; but only if the offense was committed in the "coverage territory" during the policy period.

. . .

**B. Exclusions**
**1. Applicable To Business Liability Coverage**
This insurance does not apply to:

. . .

**p. Personal Or Advertising Injury**
"Personal injury" or "advertising injury":

. . .

**(2)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

. . .

**F. Liability And Medical Expenses Definitions**
**1.** "Advertising injury" means injury arising out of one or more of the following offenses:
**a.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
**b.** Oral or written publication of material that violates a person's right of privacy;
**c.** Misappropriation of advertising ideas or style of doing business; or
**d.** Infringement of copyright, title or slogan.

Scout raises multiple contentions regarding the applicability of the prior publication exclusion found in Truck Insurance's business liability policy. First, Scout argues that an insurer is not allowed to merely look to the four corners of a complaint to determine coverage, but must also look to facts known to it. Second, Scout argues that the prior publication exclusion was not applicable because it is an ambiguous provision. And third, Scout contends that even if the prior publication exclusion does apply, fresh wrongs alleged in the OBC complaint that do not arise out of the supposed pre-coverage advertisement trigger Truck Insurance's duty to defend. None of these three theories is correct.

5

*i.    The Four Corners Rule relieved Truck Insurance's duty to defend.*

This district court determined that when reading the OBC complaint broadly, in conjunction with the business liability policy, there was no duty on the part of Truck Insurance to defend Scout. The district court limited its review to the allegations found in the OBC complaint. However, Scout contends that the duty to defend requires an insurer to also use the facts known to it in making a determination rather than relying solely on a third party complaint. However, even if we adopted Scout's interpretation of the Four Corners Rule, the district court also found that extrinsic facts, if considered, would still trigger the prior publication exclusion and relieve Truck Insurance's duty to defend.

"The duty to defend and duty to indemnify are separate, independent duties." *Deluna v. State Farm Fire and Cas. Co.*, 149 Idaho 81, 85, 233 P.3d 12, 16 (2008). The duty of an insurer to defend its insured is much broader than its duty to indemnify and "arises upon the filing of a complaint whose allegations, in whole or in part, read broadly, reveal a potential for liability that would be covered by the insured's policy." *Hoyle v. Utica Mut. Ins. Co.*, 137 Idaho 367, 371–72, 48 P.3d 1256, 1260–61 (2002). "Where there is doubt as to whether a theory of recovery within the policy coverage has been pled in the underlying complaint, the insurer must defend regardless of possible defenses arising under the policy or potential defenses arising under substantive law governing the claim against the insured." *Construction Mgmt. Sys., Inc. v. Assurance Co. of America*, 135 Idaho 680, 682–83, 23 P.3d 142, 144–45 (2001). So long as there exists a genuine dispute over facts bearing on coverage under the policy or over the application of the policy's language to the facts, the insurer has a duty to defend. *Id.* at 683, 23 P.3d at 145.

An insurer that believes it has no duty to defend an insured in a matter may seek declaratory relief, or it may "evaluate the claims and determine whether an arguable potential exists for a claim covered by the policy." *Kootenai Cnty. v. Western Cas. and Sur. Co.*, 113 Idaho 908, 910–11, 750 P.2d 87, 99–100 (1988) (citing *State of Idaho v. Bunker Hill Co.*, 647 F.Supp. 1064, 1068 (D. Idaho 1986)). If a complaint discloses no possibility of coverage, the insurer may properly decline to defend against it. *Cnty. of Boise v. Idaho Cntys. Risk Mgmt. Program, Underwriters*, 151 Idaho 901, 904, 265 P.3d 514, 517 (2011). In making a determination of coverage, "an insurer does not have to look beyond the words of the complaint to determine if a possibility of coverage exists." *AMCO Ins. Co. v. Tri-Spur Inv. Co.*, 140 Idaho 733, 738, 101 P.3d 226, 231 (2004) (citing *Hoyle*, 137 Idaho at 373–74, 48 P.3d at 1256). If an

6

exclusion in a business liability policy clearly and unambiguously excludes certain injuries, an insurer's duty to defend is not triggered. *Construction Mgmt.*, 135 Idaho at 682, 23 P.3d at 146. However, an insurer "acts at its own peril if it chooses not to defend a case and it is later determined that the insurance company did, in fact, have such a responsibility." *Hoyle*, 137 Idaho at 371, 48 P.3d at 1260.

In this case, the district court held that "the duty to defend is framed solely by the allegations of the underlying complaint." Truck Insurance denied coverage after reviewing the four corners of the OBC complaint. Because the OBC complaint alleged that "[i]n October 2012" Scout began using the ROGUE mark and included exhibits showing such use, any injury arising from that use would properly be excluded from coverage. Scout, however, disputes that use of ROGUE *in connection with* a restaurant and bar began in October 2012, but rather began only after the coverage period began because it was not yet in business in October. Truck Insurance is alleged to have known these facts because of the documents it had in its possession regarding business permits Scout provided it. This dispute in the facts of the complaint, Scout argues, creates a genuine dispute over the facts bearing on coverage, thereby creating a duty to defend. We disagree.

This Court has consistently held that insurers need only look at the complaint and read it broadly in order to determine if coverage exists. *See, e.g., Cnty. of Boise*, 151 Idaho at 904, 265 P.3d at 517; *Deluna*, 149 Idaho at 84, 233 P.3d at 15; *AMCO*, 140 Idaho at 738, 101 P.3d at 231; *Kootenai Cnty.*, 113 Idaho at 911, 750 P.2d at 90. The safeguard of requiring an insurer to defend when faced with genuine disputes of facts relating to coverage negates any need to adopt additional broad rules for initial determinations of a duty to defend. Simply put, under existing Idaho case law, if there is any question as to coverage when broadly reading the four corners of a complaint, an insurer must defend. However, if there is no possibility of coverage, an insurer has no duty to defend.

In this case, when reading the OBC complaint broadly, it is clear that there is no coverage and thus no duty to defend exists. The OBC complaint alleged that the use of the mark ROGUE began in October 2012, a month before Truck Insurance began providing insurance coverage. The applicable provision in the insurance policy excludes any advertising injury that arose out of any written material first published prior to the beginning of the policy period. Because OBC alleged that the mark ROGUE was first published before Truck Insurance's policy was issued

7

and it was supported by an exhibit showing said use, the prior publication exclusion excluded coverage and Truck Insurance had no duty to defend. Additionally, even if evidence that Scout was not in business at the time of the first publication is considered, Truck Insurance would still be relieved of its duty to defend because of the prior publication exception, as will be explained below.

    *ii.    The prior publication exclusion is not ambiguous.*

The district court held that the prior publication exclusion was not ambiguous, rejecting Scout's argument that a prior publication must be independently "injurious." Scout argues that the district court erred because the prior publication exclusion is ambiguous as evidenced by an absence of settled legal meaning and because it is not clear whether the October Facebook post of the ROGUE mark was a "prior publication." Truck Insurance responds that a split of authority does not necessarily create an ambiguity, and the Facebook post was a prior publication under the policy because use of the ROGUE mark was a continuing infringement throughout pre- and post-insurance coverage.

"Whether an insurance policy is ambiguous is a question of law over which this Court exercises free review." *Armstrong v. Farmers Ins. Co. of Idaho*, 147 Idaho 67, 69, 205 P.3d 1203, 1205 (2009). To determine if an insurance policy is ambiguous, the general rules of contract law are applied subject to certain special canons of construction. *Id.* These rules include looking at the plain language of the policy and reading the provisions within the context in which they occur in the policy. *Purvis v. Progressive Cas. Ins. Co.*, 142 Idaho 213, 216, 127 P.3d 116, 119 (2005). Additionally, "[u]nless contrary intent is shown, common, non-technical words are given the meaning applied by laymen in daily usage—as opposed to the meaning derived from legal usage—in order to effectuate the intent of the parties." *Howard v. Oregon Mut. Ins. Co.*, 137 Idaho 214, 218, 46 P.3d 510, 514 (2002). Where policy language is found to be unambiguous, the Court is to construe the policy as written, and the Court by construction cannot create a liability not assumed by the insurer nor make a new contract for the parties, or one different from that plainly intended, nor add words to the contract of insurance to either create or avoid liability." *Purvis*, 142 Idaho at 216, 127 P.3d at 119.

In contrast, a provision may be found to be ambiguous when it is reasonably subject to conflicting interpretations. *Id.* The burden is properly on the insurer to use clear and precise language if it desires to restrict the scope of its coverage. *Moss v. Mid-America Fire and Marine*

8

*Inc. Co.*, 103 Idaho 298, 300, 647 P.2d 754, 756 (1982). If a policy term or provision is ambiguous, this Court construes it liberally in favor of recovery, with all ambiguities being resolved against the insurer. *AMCO*, 140 Idaho at 739, 101 P.3d at 232. Ambiguities are resolved against the insurer because "insurance policies are contracts of adhesion, not subject to negotiation between the parties." *Moss*, 103 Idaho at 300, 647 P.2d at 756.

Scout argues that the prior publication exclusion's use of the term "arising out of" is ambiguous because some courts have interpreted this term to mean that a prior publication must cause an injury when initially published and/or cause the same or substantially similar injury as any later injuries. Truck Insurance disagrees and proposes that the prior publication exclusion only requires that similar material be published before coverage and does not need to be independently actionable or injurious.

The contractual provision excluding coverage for advertising injuries "[a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period," is unambiguous. "Arise" is defined as to "come into being; originate," or to "occur as a result of." *Arise*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003). Use of the phrase "arising out of" generally "does not require a direct proximate causal connection but instead merely requires some causal relation or connection." 7 COUCH ON INS. § 101:52 (3rd ed. 2018). Plainly read, the exclusion clearly indicates that if an injury arises after coverage is purchased, it will not be covered if the material was published prior to coverage. The "arising out of" language necessitates a causal connection with the later advertising injury, but so long as that connection exists the prior publication exclusion excludes coverage. Thus, there is no prima facie ambiguity in the policy's provision.

Yet, Scout argues that the material first published needs to not only be causally connected, but that it must also be actionable in its own right to trigger the exclusion. The Seventh Circuit's interpretation of the prior publication exclusion in *Capitol Indemnity Corporation v. Elston Self Service Wholesale Groceries, Inc.*, is cited as authority for this proposition. 559 F.3d 616 (7th Cir. 2009) (applying Illinois law). In *Capitol Indemnity*, a distributor of wholesale merchandise sold genuine Newport cigarettes, among other things. *Id.* at 617. After purchasing a business liability policy, the distributor began selling counterfeit cigarettes in legitimate Newport cigarette packaging. *Id.* The distributor's insurer declined to provide coverage for a trademark infringement claim brought by the owners of Newport, because

9

the insurer determined that the previous use of the Newport label triggered the prior publication exclusion. *Id.* at 619–20. The appellate court disagreed that the prior publication exclusion was triggered in this instance, holding that the prior use was not wrongful and therefore was not a 'material' publication:

> We understand the term "material" in the exclusion to refer to "injurious" material. By its terms, the prior publication exclusion abrogates the insurer's duty to defend only where it can prove that the insured's prior publication of the same actionable, injurious material alleged in the underlying complaint occurred prior to the beginning of its policy. This interpretation is logical because the exclusion exists to prevent an insured from purchasing an insurance policy to cover liability for illegal acts which it had undertaken prior to purchasing the policy. Put another way, the purpose of the exclusion is to prevent an individual who has caused an injury from buying insurance so that he can continue his injurious behavior.
>
> We do not see any ambiguity in the meaning of the exclusion; it seems clear that the exclusion only abrogates the duty to defend where the insured's first publication of actionable material occurred prior to the beginning of its policy.

*Id.* at 620. Thus, Scout urges this Court adopt the view that the prior publication exclusion is triggered only when prior published material is independently actionable or injurious. *See also Street Surfing, LLC v. Great Am. E & S Ins. Co.*, 776 F.3d 603, 610 (9th Cir. 2014) (applying California law) ("In the context of advertising injury coverage, an allegedly wrongful advertisement published before the coverage period triggers application of the prior publication doctrine.").

Rather than the "actionable or injurious" theory, Truck Insurance urges this court to adopt the "landmark" approach to the prior publication doctrine. Under the landmark view, "[t]he relevant question for the exclusion . . . is not when the claim first became actionable, but when the material giving rise to the claims was first published." *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F.Supp.2d 704 (S.D. Tex. 2000) (applying Texas law). The *Matagorda* court was faced with the applicability of a similar prior publication exclusion for a wristwatch website that was allegedly infringing on a watchmaker's copyright. *Id.* at 715–16. In holding that the prior publication exclusion excluded coverage, the court stated that "[o]ne purpose of the exclusion is to prevent all insured from obtaining coverage for risks already known to the insured . . . 'An insured cannot insure against something that has already begun and which is known to have begun.'" *Id*. at 716. Thus, under the landmark view, "the 'first publication' date is a landmark: if the injurious advertisement was 'first published' before the policy began, then

10

coverage for the 'advertising injury' is excluded." *Applied Bolting Tech. Prod., Inc. v. U.S. Fid. & Guar. Co.*, 942 F.Supp. 1029 (E.D. PA 1996).

We agree with the district court that the landmark view ought to be utilized in this case. The independently actionable theory used in *Capitol Indemnity* is confined to the unique facts in that case. There, the court understood the term "material" to mean "injurious material" so that the insurer could not use the pre-coverage sale of genuine Newport cigarettes as a basis for an exclusion of post-coverage sales of counterfeit cigarettes in the same genuine packaging. *Capital Indemnity*, 559 F.3d at 620. The *Capitol Indemnity* court recognized the lack of a causal connection between the pre- and post-coverage activities of the wholesale cigarette distributer. However, no such facts exist in the present case that requires use of the unique independently actionable theory. Therefore, the landmark view will be employed.

In this case, Scout published a Gone Rogue logo on its Facebook page a month before purchasing business liability coverage. The screenshot, found in the exhibits of the OBC complaint, features the Facebook page "Gone Rogue Pub." However, Scout claims that the page was entitled *Casa del Sol* until it was changed to *Gone Rogue Pub* after purchasing liability insurance. The logo in the October-posting only features the words GONE ROGUE, and does not contain the additional word PUB as all Scout's other logos feature after purchasing insurance. The posting is accompanied by Scout stating that it is "our new logo," and a user comment states, "all you need is your very own 'Gone Rogue' house brew."

The October-posting of the logo was similar in every way to the later logos but for the PUB addition. It was apparent that the logo was for a new restaurant because *Casa del Sol*, the prior place of business, was a restaurant in downtown Boise, and because Gone Rogue was featured in an online article as a pub. Additionally, at least one commenter on the Facebook page understood the posting to be for a bar, as evidenced by his suggestion of Gone Rogue creating its own house brew. The owner of the trademark, OBC, even considered the October posting injurious when it alleged that the infringement of its registered trademark ROGUE *began* in October 2012. The October posting was the landmark for Scout's continuing acts that ultimately resulted in an infringement suit. Because of this landmark, Truck Insurance had no duty to defend Scout because any advertising injury that occurred after the October publication was excluded from coverage due to the prior publication exclusion.

    iii.    *The post-coverage advertisements were not fresh wrongs.*

11

Scout argues that even if the October posting is considered a prior publication under the policy, Truck Insurance nevertheless had a duty to defend Scout in the OBC action because certain allegations in the complaint—namely cybersquatting under the Lanham Act and trademark infringement for glassware, clothing, beer and ale—constitute distinct, fresh wrongs that are covered by the policy and not excluded under the prior publication exclusion. The district court determined that Scout's post-insurance uses of the ROGUE mark were not fresh wrongs that triggered Truck Insurance's duty to defend because use of the mark originated with the October posting and was continuous therefrom.

Various courts have held that post-coverage advertisements that are sufficiently distinct from pre-coverage advertisements constitute "fresh wrongs" that trigger an insurer's duty to defend, regardless of other advertisements excluded under a prior publication exclusion. An example of an application of the fresh wrong approach is found in *Street Surfing, LLC, v. Great American E & S Ins. Co.*. 776 F.3d 603 (9th Cir. 2014) (applying California law). The company Street Surfing began selling skateboards using its company name in violation of the owner's registered trademark "Streetsurfer." *Id.* at 605–06. After obtaining a business liability policy, Street Surfing began also selling skateboard accessories with its company name. *Id.* After the inevitable trademark infringement action was brought, Street Surfer's insurer refused to defend the suit because of a prior publication exclusion found in its policy. *Id.* at 606–07. Street Surfer sued its insurer, arguing that even if the initial infringement actions were excluded under the prior publication exclusion, the trademark infringement allegations arising from the sale of skateboard accessories were fresh wrongs that triggered the insurer's duty to defend. *Id.* at 612. The court held that the difference in products was not material in determining a fresh wrong (i.e., skateboards v. skateboard accessories), "because the alleged wrong arose out of each term's similarity" to the advertising idea. *Id.* at 614. Therefore, to assess substantial similarity, courts should not consider all differences between pre- and post-coverage publications, but should instead focus on the *relationship* between the alleged wrongful acts manifested by the publications. *Id.* at 613–14.

Another fitting example of "fresh wrongs" is found in a Third Circuit opinion centering on trademark infringement. *Hanover Ins. Co. v. Urban Outfitters, Inc.*, 806 F.3d 761 (3rd Cir. 2014) (applying Pennsylvania law). In *Hanover*, the court had to decide if an insurer had a duty to defend under a policy with a similar prior publication exclusion in a suit brought by Navajo

12

Nation against a clothing outfitter for trademark infringement. *Id.* at 763–66. Looking strictly at the four corners of the complaint, the court decided that the alleged post-coverage infringement did not allege any fresh wrongs——fresh wrongs being defined as allegations in a complaint that allege a substantive difference between allegedly infringing advertisements, published before and during the relevant policy period. *Id.* at 768–69. The *Hanover* court listed several factors to assist in determining fresh wrongs: (1) "whether the plaintiff charged the insured with separate torts or an agglomeration;" (2) "whether the complaint describes a significant lull between pre- and post-coverage advertising initiatives;" and, (3) "whether the advertisements share a common theme relating to the alleged violation." *Id.* at 768. Because the Navajo complaint alleged continuing torts sharing a common and thematically consistent theme occurring both before and during coverage dates that were accompanied with qualifiers denoting continuity, the prior publication exclusion applied, relieving the insurer from its duty to defend. *Id.* at 769–70.

A counter-example where fresh wrongs were found, thereby creating a duty to defend, centered upon the appropriation of a marketing idea involving a Chihuahua "with a spicy Mexican personality and an insatiable craving" for tacos. *Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069, 1072 (7th Cir. 2004). Taco Bell allegedly misappropriated the Chihuahua idea from a marketer, who thereafter brought suit alleging both copyright infringement and Michigan common law misappropriation. *Id.* at 1073. Taco Bell's insurer refused to defend— pointing to its prior publication exclusion—because Taco Bell had run commercials both prior to and after coverage featuring the taco-loving Chihuahua. *Id.* The Seventh Circuit determined that the insurer had a duty to defend because the allegations in the complaint included the misappropriation of subordinate ideas as separate torts that occurred only after coverage began, even though some of the separate claims involved copyright infringement that continuously occurred before and after the insurer's coverage period. *Id.* at 1073–74. The court explained that the Chihuahua idea cannot be so broadly construed as to trigger the prior publication exclusion for all the claims found in the complaint:

> At some point a difference between the republished version of an unlawful work and the original version would be so slight as to be immaterial. But that observation cannot save the insurer when the republication contains new matter that the plaintiff in the liability suit against the insured alleges as fresh wrongs. [The marketer's] complaint claims that Taco Bell stole the "basic idea" before October 7, 1997, and used it in its earliest commercials, which predated

13

[the insurer's] coverage, but that it stole *additional, subordinate* but still protected, ideas as well and incorporated them into the later commercials. . .

The misappropriator, or at least this alleged misappropriator, takes an idea; and the boundaries of an idea can be quite uncertain. If [the marketer's] idea of a "Psycho Chihuahua" advertising campaign is defined broadly enough, it encompasses all the subordinate ideas embodied in the later commercials. But this possibility is irrelevant. We repeat that the duty to defend is determined by what is charged in the complaint. [The marketer's] complaint charges the misappropriation of the subordinate ideas as separate torts, and those torts occurred during the period covered by [the insurer's] policy.

*Id.* at 1073–74 (emphasis added) (internal citations omitted). Fresh wrongs were found in the *Taco Bell* case because of allegations present in the complaint alleging the taking of *additional* material from the marketer and using it in commercials *after* the insurer's policy was in effect. Thus, allegations found within the four corners of a complaint alleging new injuries independent of prior injuries will trigger an insurer's duty to defend, regardless of other allegations in a complaint being excluded under a prior publication exclusion.

In the present case, Scout argues that the only allegation in the OBC complaint that could possibly be excluded by the prior publication exclusion is the alleged violation of OBC's ROGUE mark used in connection with restaurant, pub, and catering services. Therefore, argues Scout, the other allegations that allege trademark infringement in connection with goods such as beer and ale, beverage glassware, beer, and clothing, are fresh wrongs that triggered Truck Insurance's duty to defend. Likewise, Scout claims the allegation of cyber-squatting under the Lanham Act due to its creation of the Facebook page www.facebook.com/GoneRoguePub, cannot reasonably be interpreted to be connected with the October posting.

Analyzing this case using the three *Hanover* factors shows that no fresh wrongs are alleged in the OBC complaint. The *Hanover* factors look to the complaint to ascertain whether separate torts are alleged, whether the complaint describes a significant continuity, and whether a common theme is present. The first factor looks to the types of claims found in the complaint, whereas the second factor looks to the continuity of harm. While separate torts are alleged in the OBC complaint, each claim incorporates and re-alleges that "In October 2012, long after OBC's first use and registration of the mark ROGUE, Defendant's commenced use of the mark ROGUE as the name of their restaurant and bar." There are no allegations of new content being taken from OBC in these complaints as there were in *Taco Bell*, but it instead alleges a constant

14

agglomeration of continuing harm stemming from the use of the ROGUE mark beginning a month before Scout's insurance coverage. Thus, the first and second factors suggest an absence of fresh wrongs.

The third factor, whether a common theme is present, demonstrates the absence of fresh wrongs. It is true that Scout was not alleged to yet be violating the ROGUE trademark in connection with glassware or clothing when it posted its October Facebook logo, but it was the *use* of the ROGUE mark that was alleged to be the common infringement across all products. Much like in *Street Surfer*, where placing a mark on different products post-coverage did not produce fresh wrongs, Scout placing the ROGUE mark on other products or on its Facebook page does not make the post-coverage wrongs "fresh." Advertising a logo featuring the word ROGUE in connection with a restaurant about to open and thereafter placing an almost identical logo featuring the word ROGUE on glassware, clothing, beer and ale, and Facebook creates substantially similar wrongs. Thus, the OBC complaint did not allege any fresh wrongs that triggered Truck Insurance's duty to defend.

**B. There was no breach of the warranty of good faith and fair dealing or bad faith failure to defend because there was no coverage under the insurance policy.**

The district court held that Truck Insurance did not have a contractual obligation to defend Scout in the underlying OBC complaint, and therefore could not have breached the warranty of good faith and fair dealing or bad faith failure to defend. We agree. If there is no coverage under an insurance contract, there can be no breach of the duty of good faith and fair dealing or liability for bad faith failure to defend.

**C. Scout is not awarded attorney's fees and costs.**

Scout's request for attorney's fees and costs under Idaho Code section 41-1839 is denied because it did not prevail.

## V. CONCLUSION

In consideration of the foregoing, the judgment of the district court is affirmed. Costs on appeal are awarded to Truck Insurance.

Chief Justice BURDICK, Justices HORTON, BEVAN and STEGNER CONCUR.

15